# EXHIBIT A

## Proposed Order

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| BLUESTEM BRANDS, INC., *et al.*,[1] | ) ) ) | Case No. 20-10566 (MFW) |
| Debtors. | ) ) | (Jointly Administered) |
|  | ) ) | **Re: Docket No. ____** |

**ORDER PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE AUTHORIZING THE DEBTORS TO EMPLOY AND RETAIN IMPERIAL CAPITAL, LLC TO PROVIDE A CHIEF RESTRUCTURING OFFICER AND ADDITIONAL PERSONNEL FOR THE DEBTORS EFFECTIVE AS OF THE PETITION DATE**

Upon the motion (the "Motion")[2] of the Debtors, for an order (this "Order") pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, authorizing and approving, effective as of the Petition Date, the agreement with Imperial Capital, LLC ("Imperial"), a copy of which is annexed as **Exhibit 1** to this Order (the "Engagement Agreement"), pursuant to which Imperial has agreed to provide Robert Warshauer to serve as the Debtors' CRO, along with any Additional Personnel as required or requested by the Debtors; and this Court having found that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012; and this Court having found that this is a core

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Bluestem Brands, Inc. (5164); Appleseed's Holdings, Inc. (9117); Blair LLC (1670); Bluestem Enterprises, Inc. (1237); Bluestem Fulfillment, Inc. (5931); Bluestem Sales, Inc. (1539); Draper's & Damon's LLC (2759); Gold Violin LLC (0873); Haband Company LLC (8496); Home Forever LLC (2324); Johnny Appleseed's, Inc. (5560); Norm Thompson Outfitters LLC (8344); Northstar Holdings Inc. (6823); Orchard Brands Corporation (6322); Orchard Brands International, Inc. (8962); Orchard Brands Sales Agency, LLC (8855); Value Showcase LLC (2920); WinterSilks, LLC (0688). The service address for each of the above Debtors is 7075 Flying Cloud Drive, Eden Prairie, MN 55344.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to those terms in the Motion.

26099437.3

proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided, and it appearing that no other or further notice need be provided; and the time for objections having expired; and this Court having reviewed the Motion and determined that the relief requested in the Motion is in the best interests of the Debtors' and their estates and creditors, and that the terms of compensation being sought by the Motion are reasonable; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings held before this Court and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion is granted as set forth herein.

2. Pursuant to sections 105 and 363 of the Bankruptcy Code, the Engagement Agreement, as modified by this Order, is hereby approved effective as of the Petition Date.

3. As of the Effective Date, pursuant to the terms of the Engagement Agreement, the Debtors are authorized to employ Mr. Warshauer as CRO and for Imperial to provide Additional Personnel, subject to the following:

   (a) Imperial and its affiliates shall not act in any other capacity (for example, and without limitation, as a claims agent/claims administrator, or investor/acquirer) in connection with these Chapter 11 Cases;

   (b) In the event the Debtors seek to have Imperial personnel assume executive officer positions (the "Executive Officers") other than Mr. Warshauer or to materially change the terms of the Engagement Agreement by either (i) modifying the functions of personnel, (ii) adding Executive Officers, or (iii) expanding the scope of the Engagement Agreement, a motion to modify the retention shall be filed;

   (c) No principal, employee, or independent contractor of Imperial shall serve as a manager of the Debtors during the pendency of these Chapter 11 Cases;

   (d) Imperial shall file with this Court, and provide notice to the Notice Parties, reports of compensation earned and expenses incurred on a monthly basis (collectively, the "Fee

Statements"). Such Fee Statements shall (i) summarize the time expended and the services provided to the Debtor, (ii) identify by name and function the staff provided, and (iii) itemize the expenses incurred. Time records shall (i) be appended to the Fee Statements, (ii) contain detailed time entries describing the task(s) performed, and (iii) be organized by project category. All time entries shall be reported in half-hour (0.5) increments. All compensation shall be subject to review by this Court in the event an objection is filed and remains unresolved by agreement of the objecting party, the Debtors, and Imperial. Objections, unless extended by agreement of the Debtors, shall be filed on or before fourteen (14) days after the filing of a Fee Statement;

(e)     The Debtors are permitted to indemnify those persons serving as Executive Officers, including the CRO, on the same terms as provided to the Debtors' other officers and directors under the corporate bylaws and applicable state law, along with insurance coverage under the Debtors' D&O policy;

(f)     Except as set forth herein, there shall be no indemnification of Imperial, its affiliates, or non-officer employees of Imperial;

(g)     For a period of three (3) years after the conclusion of the engagement, neither Mr. Warshauer, Imperial, nor Imperial's affiliates shall make any investments in the Debtors or the reorganized debtors, if any;

(h)     Imperial shall disclose any and all facts that have a bearing on whether Imperial, any of its affiliates, and/or any individuals working on the engagement hold or represent any interest adverse to the Debtors, their creditors, or other parties in interest. The obligation to disclose identified in this subparagraph is a continuing obligation; and

(i)     Success fees, transaction fees, or other back-end fees, if any, shall be approved by this Court by a separate application and order on a reasonableness standard and are not being pre-approved by entry of this Order.

4.     Except as otherwise provided in paragraph 3(b) of this Order, the Engagement Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto in accordance with the terms thereof without further order of this Court, provided that any such modification, amendment, or supplement shall have no material adverse effect on the Debtors' estates or creditors.

5.     Notwithstanding the applicability of any Bankruptcy Rule, this Order shall be effective and enforceable by its terms immediately upon entry.

26099437.3

6. This Court shall retain jurisdiction with respect to all matters arising or related to the implementation of this Order.

# **EXHIBIT 1**

**Engagement Agreement**



# Imperial Capital

10100 Santa Monica Boulevard, Suite 2400     Los Angeles, California 90067     TEL 310 246 3700     800 929 2299     FAX 310 777 3000

March 8, 2020

Bluestem Brands, Inc.
7075 Flying Cloud Drive
Eden Prairie, MN 55344
Attention:  Bruce Cazenave
              Chief Executive Officer

Dear Bruce:

      This letter confirms and sets forth the terms and conditions of the engagement among (a) Bluestem Brands, Inc. (the "*Company*" or the "*Debtors*"), (b) Robert Warshauer of Imperial Capital, LLC ("*Imperial Capital*") as the exclusive Chief Restructuring Officer ("*CRO*") to the Company in connection with the chapter 11 bankruptcy cases (the "*Bankruptcy Case*") of the Debtors, and (c) Imperial Capital, including the scope of the services to be performed and the basis of compensation for those services. Upon execution of this letter by each of the parties below and receipt of the retainer described below, this letter will constitute an agreement between the Company and Imperial Capital (the "*Agreement*").  Unless expressly provided otherwise herein, this Agreement replaces and supersedes that letter agreement dated February 18, 2020 between the parties for the provision of restructuring services (the "*Pre-Petition Agreement*").

    **1.**    **Description of Services**

      (a)    The CRO and Imperial Capital shall provide consulting services to the Company at the direction of the Company's Board of Directors (the "*Board*") in connection with their reorganization efforts and Bankruptcy Case. It is anticipated that the CRO's and Imperial Capital's activities shall include the following:

      i.    Assist the Company's financial function by supporting and supplementing the finance organization, including, without limitation, liquidity forecasting, financial planning and analysis, and recommending any short-term or longer-term liquidity enhancing measures.

      ii.    Assist the Company in evaluating strategic alternatives, including the potential sale of the Company or one or more business segments or assets; and in developing the financial analysis required to support and evaluate such strategic alternatives.

      iii.    Assist the Company in the design and implementation of a restructuring strategy designed to maximize enterprise value, taking into account the interests of all constituencies.

      iv.    Assist the Company with the development of any business plan scenarios/alternatives, and such other related forecasts as may be required by the Company's creditors in connection with negotiations or by the Company for other corporate purposes.

      v.    Assist the Company with its communications and/or negotiations with outside parties including the Company's stakeholders, lenders, and potential acquirers of Company assets.

      vi.    Assist the Company with such other matters as may be requested that fall within the CRO's and Imperial Capital's expertise, subject to mutual agreement.

Bluestem Brands, Inc.
March 8, 2020
Page 2 of 9

In rendering its services to the Company, the CRO will report directly to the Board and will make recommendations to and consult with the Board and other senior officers as the Board directs.

(b) In connection with the services to be provided hereunder, the CRO from time to time may utilize the services of other employees of Imperial Capital.

Imperial Capital personnel providing services to the Company may also work with other Imperial Capital clients in conjunction with unrelated matters.

2. **Information Provided by the Company and Forward Looking Statements**

The Company shall use all reasonable efforts to: (i) provide the CRO and Imperial Capital with access to management and other representatives of the Company; and (ii) to furnish all data, material, and other information concerning the business, assets, liabilities, operations, cash flows, properties, financial condition and prospects of the Company that the CRO and Imperial Capital reasonably requests in connection with the services to be provided to the Company. The CRO and Imperial Capital shall rely, without further independent verification, on the accuracy and completeness of all publicly available information and information that is furnished by or on behalf of the Company and otherwise reviewed by Imperial Capital in connection with the services performed for the Company. The Company acknowledges and agrees that the CRO and Imperial Capital are not responsible for the accuracy or completeness of such information and shall not be responsible for any inaccuracies or omissions therein. The CRO and Imperial Capital are under no obligation to update data submitted to it or to review any other areas unless specifically requested by the Board to do so.

You understand that the services to be rendered by the CRO and Imperial Capital may include the preparation of projections and other forward-looking statements, and numerous factors can affect the actual results of the Company's operations, which may materially and adversely differ from those projections. In addition, the CRO and Imperial Capital will be relying on information provided by the Company in the preparation of those projections and other forward-looking statements.

3. **Limitation of Duties**

The CRO and Imperial Capital make no representation or guarantee that, inter alia, (i) an appropriate restructuring proposal or strategic alternative can be formulated for the Company (ii) any restructuring proposal or strategic alternative presented to the Company's management or the Board will be more successful than all other possible restructuring proposals or strategic alternatives, (iii) restructuring is the best course of action for the Company or (iv) if formulated, that any proposed restructuring plan or strategic alternative will be accepted by any of the Company's creditors, shareholders and other constituents. Further, the CRO and Imperial Capital do not assume any responsibility for the Company's decision to pursue, or not pursue any business strategy, or to effect, or not to effect any transaction. The CRO and Imperial Capital shall be responsible for assistance with the implementation only of the restructuring proposal or strategic alternative approved by the Board and only to the extent and in the manner authorized by and directed by the Board and agreed to by the CRO and Imperial Capital.

4. **Compensation**

In consideration for the services to be provided under this Agreement by the CRO and Imperial Capital, Imperial Capital shall be paid:

(a) A monthly fee of $225,000 per month (the "***Monthly Fee***"), payable monthly in advance during the term of this Agreement. The first Monthly Fee shall be payable upon execution of this Agreement and each subsequent Monthly Fee shall be payable in advance on the first day of each month. If the first Monthly Fee is payable for a partial month, such first Monthly Fee shall be pro-rated from the date hereof to the end of the month;

Bluestem Brands, Inc.
March 8, 2020
Page 3 of 9

(b)     As compensation for Services hereunder being provided by additional Imperial Capital professionals that the CRO may reasonably designate in connection with the services to be provided hereunder, Imperial Capital shall be entitled to non-refundable professional fees based on the actual hours incurred by any Imperial personnel on matters pertinent to the engagement hereunder (the "**Hourly Fees**"). The Hourly Fees shall be based upon the following hourly rates:

| | |
|---|---|
| Managing Director | $1,150 |
| Senior Vice President | $900 |
| Associate | $750 |
| Analyst | $450 |

(c)     The Company paid to Imperial Capital a retainer of $225,000 under the Pre-Petition Agreement, which retainer shall be carried over to this Agreement.  Any amount of the Retainer that shall remain unused at the end of this Agreement shall be immediately returned to the Company after applying all unpaid fees and expenses of the CRO and Imperial Capital.

(d)     In addition, Imperial Capital will be reimbursed for its reasonable out-of-pocket expenses incurred in connection with this assignment, such as travel, lodging, duplicating, messenger and telephone charges. Under the Pre-Petition Agreement, Imperial Capital received a cash deposit of $20,000 (the "**Deposit**") against Expenses, which shall be carried over to this Agreement.  Any unused amounts of the Deposit will be returned to the Company upon demand. All fees and expenses will be billed on a monthly basis or, at Imperial Capital's discretion, more frequently. Invoices are payable upon receipt.

5.  **Term**

(a)   This Agreement will apply from the commencement of the services referred to in Section 1 and may be terminated with immediate effect by either party without cause by written notice to the other party.

(b)   Imperial Capital normally does not withdraw from an engagement unless the Company misrepresents or fails to disclose material facts, fails to pay fees or expenses, or makes it unethical or unreasonably difficult for Imperial Capital to continue performance of the engagement, or other just cause exists.

(c)   On termination of the Agreement, any fees and expenses due to Imperial Capital shall be remitted promptly (including fees and expenses that accrued prior to but are invoiced subsequent to such termination).

(d)   The provisions of this Agreement that give the parties rights or obligations beyond its termination shall survive and continue to bind the parties.

6.  **Bankruptcy Proceedings**

Promptly following its execution and delivery of this Agreement, the Company will apply to the court with jurisdiction over the Bankruptcy Case (the "**Bankruptcy Court**") for approval of Imperial Capital's retention and the designation of Mr. Warshauer as CRO, *nunc pro tunc* to the date of this Agreement and use commercially reasonable efforts to obtain an order of the Bankruptcy Court authorizing the retention of Imperial Capital and the designation of Mr. Warshauer as CRO under Section 363(b) of the Bankruptcy Code and upon the terms of this Agreement. The Company shall provide a copy of such application and proposed order to Imperial Capital for review as much in advance of filing as is reasonably practicable and such application and order must be acceptable to the Company and Imperial Capital. Following entry of the order authorizing Imperial Capital's retention and the designation of Mr. Warshauer as CRO, the Company shall pay all fees and expenses due pursuant to this Agreement, as approved by the Bankruptcy Court, as promptly as possible in accordance with the terms of this Agreement, the order of the Bankruptcy Court approving the Engagement, the Bankruptcy Code, the Bankruptcy Rules and applicable local rules and orders, and will work with

Bluestem Brands, Inc.
March 8, 2020
Page 4 of 9

Imperial Capital to promptly file any and all necessary applications regarding such fees and expenses with the Bankruptcy Court. Imperial Capital shall have no obligation to provide services under this Agreement unless Imperial Capital's retention under this Agreement is approved by final order of the Bankruptcy Court which is acceptable to Imperial Capital and which approves this Agreement in all material respects. The Company shall reimburse Imperial Capital for all reasonable and documented costs and expenses incurred by Imperial Capital (including, without limitation, reasonable and documented fees of counsel of Imperial Capital) in obtaining such order of the Bankruptcy Court. If the order authorizing Imperial Capital's employment is not obtained, or is later reversed, modified or set aside for any reason, then Imperial Capital may terminate this Agreement, and the Company shall promptly reimburse Imperial Capital for all fees and expenses due pursuant to this Agreement. The provisions of this Section shall survive the termination or expiration of this Agreement.

### 7. Relationship of the Parties

The parties intend that an independent contractor relationship will be created by this engagement letter. Neither the CRO nor Imperial Capital or any of its personnel or agents is to be considered an employee or agent of the Company and, subject to paragraph 12, the personnel and agents of Imperial Capital are not entitled to any of the benefits that the Company provides for the Company employees. The Company acknowledges and agrees that the CRO's and Imperial Capital's engagement shall not constitute an audit, review or compilation, or any other type of financial statement reporting engagement that is subject to the rules of the AICPA, SEC or other state or national professional or regulatory body.

### 8. No Third Party Beneficiary

The Company acknowledges that all advice (written or oral) provided by the CRO or Imperial Capital to the Company in connection with this engagement is intended solely for the benefit and use of the Company (limited to its Board and management) in considering the matters to which this engagement relates. The Company agrees that no such advice shall be used for any other purpose or reproduced, disseminated, quoted or referred to at any time in any manner or for any purpose other than accomplishing the tasks referred to herein without the CRO's and Imperial Capital's prior approval (which shall not be unreasonably withheld), except as required by law.

### 9. Conflicts

The CRO and Imperial Capital are not currently aware of any relationship that would create a conflict of interest with the Company or those parties-in-interest of which you have made us aware. Because Imperial Capital and its affiliates and subsidiaries comprise a financial services firm (the "*Firm*") that serves clients on a global basis in numerous cases, both in and out of court, it is possible that the Firm may have rendered or will render services to or have business associations with other entities or people which had or have or may have relationships with the Company, including creditors of the Company. The Firm will not be prevented or restricted by virtue of providing the services under this Agreement from providing services to other entities or individuals, including entities or individuals whose interests may be in competition or conflict with the Company's, provided the Firm makes appropriate arrangements to ensure that the confidentiality of information is maintained. The Company acknowledges that Imperial Capital or its affiliates may, from time to time, quote a market in or make purchases or sales for their own accounts or the accounts of its brokerage customers in debt or equity securities of or claims against the Company and Imperial Capital's research department may express views or opinions with respect thereto. Imperial Capital has, and agrees to maintain, information barriers between Imperial Capital's corporate finance department and its sales and trading department and research department, pursuant to which Imperial Capital's corporate finance employees are prohibited from disclosing confidential information to Imperial Capital's sales and trading or research employees.

### 10. Confidentiality

The CRO and Imperial Capital shall keep as confidential all non-public information received from the Company in conjunction with this engagement, except: (i) as requested by the Company or its legal counsel; (ii) as required by legal proceedings, subject to process below or (iii) as reasonably required in the performance of this engagement. The CRO and

Bluestem Brands, Inc.
March 8, 2020
Page 5 of 9

Imperial Capital will give notice to the Company of any subpoena or court order it receives requiring disclosure of Confidential Information so that the Company may seek an appropriate protective order and/or waive Imperial Capital's compliance with the provisions of this Agreement. If the CRO or Imperial Capital is legally compelled to disclose any of the Confidential Information to such court, agency, or authority, then the CRO or Imperial Capital will disclose only that portion of the Confidential Information that Imperial Capital's counsel advises that it is compelled to disclose, provided, however, that no notice shall be required in connection with routine regulatory examinations (including those of self-regulatory organizations) not targeted at the Company. All obligations as to non-disclosure shall cease as to any part of such information to the extent that such information is or becomes public other than as a result of a breach of this provision.

11. **Indemnification and Limitations on Liability**

The attached indemnification and limitation on liability agreement is incorporated herein by reference and shall be executed upon the acceptance of this Agreement. Termination of this engagement shall not affect these indemnification and limitation on liability provisions, which shall remain in full force and effect. In no event shall the CRO, Imperial Capital, or any other Indemnitee be liable to the Company or its affiliates, successors, or any person claiming on behalf of or in the right of the Company (including the Company's owners, parents, affiliates, successors, directors, officers, employees, agents, security holders, or creditors) for (i) any amount which, when taken together with all losses for which the CRO, Imperial Capital, and the Indemnified Parties are liable in connection with this Agreement or the Engagement, would exceed the amount of fees for the Services actually received by Imperial Capital from the Company in connection with the Engagement during the immediately preceding 12 months or (ii) any special, consequential, incidental or exemplary damages or loss (or any lost profits, savings or business opportunity) (the amounts described in clauses (i) and (ii) collectively, the "*Liability Cap*"). This paragraph shall apply regardless of the nature of any claim(s) (including claims based on contract, statute, negligence, tort, strict liability or otherwise), regardless of any failure of the essential purpose of any remedy and whether or not the CRO or Imperial Capital was advised of the possibility of the damage or loss asserted, but shall not apply to the extent finally determined by final and non-appealable judgment of a court of competent jurisdiction to be prohibited by applicable law. The provisions of this Section shall survive the termination or expiration of this Agreement.

12. **D&O Insurance**

The Company shall specifically include and cover the CRO with direct coverage under the Company's policy for liability insurance covering its directors, officers and any equivalently placed employees (the "*D&O Insurance*"). Upon request of the CRO, the Company shall provide the CRO with a copy of the policy documentation for its then-current D&O Insurance, a certificate of insurance evidencing the policy is in full force and effect, and a copy of the signed board resolutions and any other documents as Imperial Capital may reasonably request evidencing the appointment and coverage of the indemnitees. The Company will maintain such D&O Insurance coverage for the period through which claims can be made against such persons. The Company disclaims a right to distribution from the D&O Insurance coverage with respect to such persons. In the event that the Company is unable to include the CRO under the Company's D&O Insurance coverage or does not have first dollar coverage reasonably acceptable to the CRO in effect for at least $20 million (*e.g.*, there are outstanding or threatened claims against officers and directors alleging prior acts that may give rise to a claim), then the CRO may, at its option, attempt to purchase a separate D&O insurance policy that will cover the CRO. The cost of such separate policy shall be invoiced to the Company as an out-of-pocket expense. If the CRO is unable or unwilling to purchase such separate D&O insurance policy, then the CRO reserves the right to immediately terminate the Agreement.

13. **Miscellaneous**

This Agreement (together with the attached indemnity provisions), including, without limitation, the construction and interpretation thereof and all claims, controversies and disputes arising under or relating thereto, shall be governed and construed in accordance with the laws of the State of New York, without regard to principles of conflict of law that would defer to the laws of another jurisdiction. The Company and Imperial Capital agree to waive trial by jury in any action, proceeding or counterclaim brought by or on behalf of the parties hereto with respect to any matter relating to or arising out

Bluestem Brands, Inc.
March 8, 2020
Page 6 of 9

of the engagement or the performance or non-performance of Imperial Capital hereunder. The Company and Imperial Capital agree, to the extent permitted by applicable law, that any Federal Court sitting within the Southern District of New York shall have exclusive jurisdiction over any litigation arising out of this Agreement; to submit to the personal jurisdiction of the Courts of the United States District Court for the Southern District of New York; and to waive any and all personal rights under the law of any jurisdiction to object on any basis (including, without limitation, inconvenience of forum) to jurisdiction or venue within the State of New York for any litigation arising in connection with this Agreement.

      This Agreement shall be binding upon Imperial Capital and the Company, their respective heirs, successors, and assignees, and any heir, successor, or assignee of a substantial portion of Imperial Capital's or the Company's respective businesses and/or assets, including any Chapter 11 Trustee. This Agreement incorporates the entire understanding of the parties with respect to the subject matter hereof and may not be amended or modified except in writing executed by the Company and Imperial Capital. Notwithstanding anything herein to the contrary, upon the Company's approval, Imperial Capital may reference or list the Company's name and/or logo and/or a general description of the services in Imperial Capital's marketing materials, including, without limitation, on Imperial Capital's website.

      If any term, provision or portion of this Agreement shall be determined to be invalid, void or unenforceable, the remainder of the terms, provisions and portions of this Agreement letter shall remain in full force and effect. No failure or delay by either party in exercising any right, power or remedy hereunder or pursuant hereto, or any failure to give notice of any breach of or to require compliance with any term of this agreement, shall operate as a waiver thereof.

      All notices required or permitted to be delivered under this Agreement shall be sent, if to Imperial Capital, to the address set forth at the head of this letter, to the attention of Robert Warshauer, and if to the Company, to the address set forth above to the attention of the Company's Chief Executive Officer with a copy to the General Counsel, or to such other name or address as may be given in writing to the other party. All notices under this Agreement shall be sufficient if delivered by facsimile or overnight courier. Any notice shall be deemed to be given only upon actual receipt.

Bluestem Brands, Inc.
March 8, 2020
Page 7 of 9

      Please confirm that the foregoing correctly sets forth our agreement by signing and returning to Imperial Capital the enclosed original copy of this Agreement.

Very truly yours,

**IMPERIAL CAPITAL, LLC**

By: _____
Name: Christopher Shepard
Title: EVP

Accepted and agreed as of the date first above written:

Bluestem Brands, Inc.

By: _____
Name: Bruce Cazenave
Title: CEO

Accepted and agreed as of the date first above written:

Robert Warshauer

By: _____

Bluestem Brands, Inc.
March 8, 2020
Page 8 of 9

**Schedule I**

This indemnification and limitation on liability agreement is made part of an agreement, dated March 8, 2020 (which together with any renewals, modifications or extensions thereof, is herein referred to as the "***Agreement***") by and between Robert Warshauer (the "***CRO***"), Imperial Capital, LLC ("***Imperial Capital***") and Bluestem Brands, Inc. (the "***Company***"), for services to be rendered to the Company by Imperial Capital.

A. The Company agrees to indemnify and hold harmless each of the CRO, Imperial Capital, its affiliates and their respective shareholders, members, managers, employees, agents, representatives and subcontractors (each, an "***Indemnified Party***" and collectively, the "***Indemnified Parties***") against any and all losses, claims, damages, liabilities, penalties, obligations and expenses, including the reasonable costs for counsel or others (including employees of Imperial Capital, based on their then current hourly billing rates) in investigating, preparing or defending any action or claim, whether or not in connection with litigation in which any Indemnified Party is a party, or enforcing the Agreement (including these indemnity provisions), as and when incurred, caused by, relating to, based upon or arising out of (directly or indirectly) the Indemnified Parties' acceptance of or the performance or nonperformance of their obligations under the Agreement; provided, however, such indemnity shall not apply to any such loss, claim, damage, liability or expense to the extent it is found in a final judgment by a court of competent jurisdiction to have resulted primarily and directly from such Indemnified Party's gross negligence or willful misconduct. The Company also agrees that (a) no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company for or in connection with the engagement of Imperial Capital, except to the extent that any such liability for losses, claims, damages, liabilities or expenses are found in a final judgment by a court of competent jurisdiction to have resulted primarily and directly from such Indemnified Party's gross negligence or willful misconduct and (b) in no event will any Indemnified Party have any liability to the Company for special, consequential, incidental or exemplary damages or loss (nor any lost profits, savings or business opportunity). The Company further agrees that it will not, without the prior consent of an Indemnified Party, settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which such Indemnified Party seeks indemnification hereunder (whether or not such Indemnified Party is an actual party to such claim, action, suit or proceedings) unless such settlement, compromise or consent includes an unconditional release of such Indemnified Party from all liabilities arising out of such claim, action, suit or proceeding.

B. These indemnification provisions shall be in addition to any liability which the Company may otherwise have to the Indemnified Parties. In the event that, at any time whether before or after termination of the engagement or the Agreement, as a result of or in connection with the Agreement or Imperial Capital's and its personnel's role under the Agreement, Imperial Capital or any Indemnified Party is required to produce any of its personnel (including former employees) for examination, deposition or other written, recorded or oral presentation, or Imperial Capital or any of its personnel (including former employees) or any other Indemnified Party is required to produce or otherwise review, compile, submit, duplicate, search for, organize or report on any material within such Indemnified Party's possession or control pursuant to a subpoena or other legal (including administrative) process, the Company will reimburse the Indemnified Party for its out of pocket expenses, including the reasonable fees and expenses of its counsel, and will compensate the Indemnified Party for the time expended by its personnel based on such personnel's then current hourly rate.

C. If any action, proceeding or investigation is commenced to which any Indemnified Party proposes to demand indemnification hereunder, such Indemnified Party will notify the Company with reasonable promptness; provided, however, that any failure by such Indemnified Party to notify the Company will not relieve the Company from its obligations hereunder, except to the extent that such failure shall have actually prejudiced the defense of such action. The Company shall promptly pay expenses reasonably incurred by any Indemnified Party in defending, participating in, or settling any action, proceeding or investigation in which such Indemnified Party is a party or is threatened to be made a party or otherwise is participating in by reason of the engagement under the Agreement, upon submission of invoices therefor, whether in advance of the final disposition of such action, proceeding, or investigation or otherwise. Each Indemnified Party hereby unde1takes, and the Company hereby accepts its undertaking, to repay any and all such amounts so advanced if it shall ultimately be determined that such Indemnified Party is not entitled to be indemnified

Bluestem Brands, Inc.
March 8, 2020
Page 9 of 9

> therefor. If any such action, proceeding or investigation in which an Indemnified Party is a party is also against the Company, the Company may, in lieu of advancing the expenses of separate counsel for such Indemnified Party, provide such Indemnified Party with legal representation by the same counsel who represents the Company, provided such counsel is reasonably satisfactory to such Indemnified Party, at no cost to such Indemnified Party; provided, however, that if such counsel or counsel to the Indemnified Party shall determine that due to the existence of actual or potential conflicts of interest between such Indemnified Party and the Company such counsel is unable to represent both the Indemnified Party and the Company, then the Indemnified Party shall be entitled to use separate counsel of its own choice, and the Company shall promptly advance its reasonable expenses of such separate counsel upon submission of invoices therefor. Nothing herein shall prevent an Indemnified Party from using separate counsel of its own choice at its own expense. The Company will be liable for any settlement of any claim against an Indemnified Party made with the Company's written consent, which consent shall not be unreasonably withheld.

D. In order to provide for just and equitable contribution if a claim for indemnification pursuant to these indemnification provisions is made but it is found in a final judgment by a court of competent jurisdiction that such indemnification may not be enforced in such case, even though the express provisions hereof provide for indemnification, then the relative fault of the Company, on the one hand, and the Indemnified Parties, on the other hand, in connection with the statements, acts or omissions which resulted in the losses, claims, damages, liabilities and costs giving rise to the indemnification claim and other relevant equitable considerations shall be considered; and further provided that in no event will the Indemnified Parties' aggregate contribution for all losses, claims, damages, liabilities and expenses with respect to which contribution is available hereunder exceed the amount of fees actually received by the Indemnified Parties pursuant to the Agreement. No person found liable for a fraudulent misrepresentation shall be entitled to contribution hereunder from any person who is not also found liable for such fraudulent misrepresentation.

E. In the event the Company and Imperial Capital seek judicial approval for the assumption of the Agreement or authorization to enter into a new engagement agreement pursuant to either of which Imperial Capital would continue to be engaged by the Company, the Company shall promptly pay expenses reasonably incurred by the Indemnified Parties, including reasonable attorneys' fees and expenses, in connection with any motion, action or claim made either in support of or in opposition to any such retention or authorization, whether in advance of or following any judicial disposition of such motion, action or claim, promptly upon submission of invoices therefor and regardless of whether such retention or authorization is approved by any court. The Company will also promptly pay the Indemnified Parties for any expenses reasonably incurred by them, including attorneys' fees and expenses, in seeking payment of all amounts owed it under the Agreement (or any new engagement agreement) whether through submission of a fee application or in any other manner, without offset, recoupment or counterclaim, whether as a secured claim, an administrative expense claim, an unsecured claim, a prepetition claim or a post-petition claim.

F. Subject to bankruptcy law and regulations, neither termination of the Agreement nor termination of the CRO's or Imperial Capital's engagement nor the filing of a petition under Chapter 7 or 11 of the United States Bankruptcy Code (nor the conversion of an existing case to one under a different chapter) shall affect these indemnification provisions, which shall hereafter remain operative and in full force and effect.

G. The rights provided herein shall not be deemed exclusive of any other rights to which the Indemnified Parties may be entitled under the certificate of incorporation or bylaws of the Company, any other agreements, any vote of stockholders or disinterested directors of the Company, any applicable law or otherwise.