**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Bluestem Brands, Inc., | ) | |
| | ) | Case No. 20-10566 (MFW) |
| | ) | |
| Debtors. | ) | Rel. Docs. 919, 942, |
| | ) | 946, 947, 952, 956, 957, |
| | ) | 962 |
| _____ | ) | |

**MEMORANDUM OPINION**[1]

Before the Court are Motions for Allowance and Payment of
Administrative Claims filed by Prati Kreations ("Prati") and DPI
Fashions Private Limited ("DPI"), respectively, as well as
Prati's Motion for Reconsideration of the Order Disallowing or
Reclassifying Claim No. 1085.  The Plan Administrator filed
objections to the Motions on the ground that the claims are time-
barred or, alternatively, do not satisfy administrative priority
status under section 503(b)(1)(A) of the Bankruptcy Code (the
"Code").  For the reasons stated below, the Court will overrule
the Plan Administrator's Objections and grant the Motions.

I.   BACKGROUND

On March 9, 2020 (the "Petition Date"), the Debtors filed
voluntary petitions for relief under chapter 11 of the Code.
Prior to filing bankruptcy, the Debtors placed several orders for

---

[1]    This Memorandum Opinion constitutes the findings of fact and
conclusions of law of the Court pursuant to Rule 7052 of the
Federal Rules of Bankruptcy Procedure, which is made applicable
to contested matters by Rule 9014.

goods with two foreign vendors based in India, Prati and DPI
(collectively "the Vendors").  In February 2020, the Vendors
placed the goods with a shipping carrier bound for the Debtors.
Some of the goods under these orders, which are the subject of
this dispute, were received by the Debtors post-petition:
$79,211.85 of Prati's goods and $33,657.53 of DPI's goods.

DPI timely filed general unsecured proofs of claim, Nos. 247
and 259, for its shipments.  Prati timely filed a proof of claim
for a part of its shipments ($24,527.07) which alleged priority
under section 503(b)(9) ("Claim No. 1085").  Claim No. 1085 was
reclassified as a general unsecured claim on August 3, 2020, when
Prati failed to respond to the Debtors' First Omnibus
(Substantive) Objection to Claims.  (D.I. 654.)

Prati filed its Motion for Allowance of an Administrative
Claim for $79,211.85 on December 8, 2020, and DPI filed its
Motion for Allowance of an Administrative Claim for $33,657.53 on
March 3, 2021.  (D.I. 919 & 947.)  Neither Motion was filed
before the Bar Date of September 27, 2020.  Prati also filed a
Motion to Reconsider the Court's order reclassifying Claim No.
1085 as a general unsecured claim, and that amount is included as
part of Prati's Administrative Claim.  (D.I. 942.)

The Plan Administrator filed objections to the Vendors'
Motions.  (D.I. 946 & 947.)  The Vendors filed Replies.  (D.I.
956 & 957.)  The Court heard oral argument on April 22, 2021,

after which the Court took the matter under advisement.  With the
Court's permission, the Vendors filed a Letter on April 26, 2021,
addressing new authority cited by the Plan Administrator in oral
argument.  (D.I. 962.)


II.  <u>JURISDICTION</u>

The Court has jurisdiction over these contested matters.
28 U.S.C. §§ 1334(b) & 157(b)(2)(B) (giving bankruptcy courts
jurisdiction over the allowance of claims asserted against the
estate).  The Court may enter a final order on issues integral to
allowance of claims.  <u>Stern v. Marshall</u>, 564 U.S. 462, 499
(2011).


III. <u>DISCUSSION</u>

A.  <u>Standard of Review</u>

1.  <u>Section 503(b)(1)(A) Administrative Status</u>

Section 503(b)(1)(A) of the Code grants administrative
status to claims for "the actual, necessary costs and expenses of
preserving the estate . . . ."  11 U.S.C. 503.  <u>See</u> <u>In re O'Brien
Env't Energy, Inc.</u>, 181 F.3d 527, 532-33 (3d Cir. 1999).  The
burden of proof is on the claimant to establish that the goods or
services provided actually benefitted the estate and were
necessary to preserve the value of the estate's assets.  <u>Id.</u>

3

2.    Late-Filed Claims

Section 503(a) of the Code provides that an entity may
"tardily file" a request for payment of an administrative expense
"if permitted by the court for cause."  Many courts apply the
"excusable neglect" standard under Rule 9006(b)(1) in determining
whether "cause" exists under section 503(a).  Fed. R. Bankr. P.
9006.  See, e.g., In re AMF Bowling Worldwide, Inc., 520 B.R.
185, 196 (Bankr. E.D. Va. 2014); In re Bridgeview Aerosol, LLC,
No. 09 B 41021, 2010 WL 2465401, at *2 (Bankr. N.D. Ill. June 16,
2010).

3.    Reconsideration of Disallowed/Reclassified Claim

Similarly, section 502(j) of the Code provides that a claim
that was disallowed may be "reconsidered for cause."  Courts
apply the "excusable neglect" standard under Federal Rule of
Civil Procedure 60(b) in determining whether to reconsider a
claim under section 502(j).[2]  See In re Inacom Corp., Civ. A. 04-
390-GMS, 2004 WL 2283599, at *2 (D. Del. Oct. 4, 2004) (applying
excusable neglect standard to reconsideration of previously
disallowed claim); U.S. v. Motor Freight Express (In re Motor
Freight Express), 91 B.R. 705, 711 (Bankr. E.D. Pa. 1988)
(applying excusable neglect standard in reconsidering an
administrative claim previously classified as a priority claim).

---

[2]    Rule 9024 of the Federal Rules of Bankruptcy Procedure
incorporates Federal Rule of Civil Procedure 60(b) in contested
matters.

4.    <u>Excusable Neglect</u>

The Supreme Court identified four factors for determining excusable neglect: "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." <u>Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship.</u>, 507 U.S. 380, 395 (1993) (adopting test applied by lower court to consideration of creditor's late-filed claim).    <u>See also</u>, <u>In re Am. Classic Voyages Co.</u>, 405 F.3d 127, 133 (3d Cir. 2005) (affirming denial of request to file late claim because creditor had not established excusable neglect); <u>In re O'Brien Envtl. Energy, Inc.</u>, 188 F.3d 116, 126-27 (3d Cir. 1999) (concluding that creditor had met the <u>Pioneer</u> standards and remanding for consideration of late-filed claim).

B.    <u>Reconsideration/Late-filed Claims</u>

Although both Administrative Claims were filed after the bar date, the Plan Administrator only argued that DPI's was time-barred.  The Plan Administrator did, however, object to Prati's Motion for Reconsideration.  Because the issues raised by the Motions and the Plan Administer's objections apply the excusable neglect standard, the Court considers them together.

      1.  <u>Prejudice to the Debtor</u>

The Vendors argue that there is no prejudice to the estate by considering their claims.  They contend that they filed proofs of claim that contained sufficient information to put the Debtors on notice that they had incurred administrative expenses. Although their proofs of claim did not include delivery receipts, they did include invoices for goods that the Debtors acknowledged they received post-petition.

In similar circumstances, Courts have recharacterized proofs of claim as requests for payment of administrative expenses.  <u>See</u> <u>In re Hemingway Transp., Inc.</u>, 993 F.2d 915, 928-29 (1st Cir. 1993) (recharacterizing a timely filed proof of claim as a request for payment of an administrative claim); <u>In re Fas Mart Convenience Stores, Inc.</u>, 320 B.R. 587, 593-94 (Bankr. E.D. Va. 2004) (same, if the proof of claim describes an administrative expense in substance); <u>In re Cardinal Indus., Inc.</u>, 151 B.R. 838, 841 (Bankr. S.D. Ohio 1992) (treating filed proof of claim as a formal request for an administrative expense, in the interest of judicial economy).  <u>But see</u> <u>In re Taco Bueno Rests., Inc.</u>, 606 B.R. 289, 301-03 (Bankr. N.D. Tex. 2019) (denying late-filed application for administrative expense, despite claimant's timely filed proof of claim that asserted a claim for post-petition rent).

The Court agrees with the analysis of the Courts which recharacterize timely filed proofs of claim as administrative claims if they contain sufficient facts to put the debtor on notice that they are administrative claims.

The Court concludes that in this case, the Vendors' claims meet that standard.  Therefore, the Court finds that there will not be any prejudice to the estate if it considers the late-filed administrative claims of the Vendors or reconsiders its order classifying part of Prati's claim as a general unsecured claim. The Debtors had notice of the facts relevant to the Vendors' claims, because they both filed proofs of claim.  Although neither claim attached proof of delivery of the goods, the Debtors' notice of the general bar date did not require that evidence.  (D.I. 220.)  Further, the Debtors' records reflected that they received the goods at issue post-petition.

Therefore, the Court finds that this factor favors considering the merits of those claims.

2.   <u>Length of Delay and Impact on Proceedings</u>

The Court finds that the length of delay of two to five months between the Administrative Claims Bar Date and the filing of the Vendors' Motions is not sufficient to warrant denying them.  The Court notes that the claims reconciliation process is still ongoing and distributions to creditors have not begun.  <u>See</u> <u>O'Brien</u>, 188 F.3d at 130; <u>Inacom</u>, 2004 WL 2283599, at *4.

Therefore, this factor favors considering the merits of the claims.

     3. <u>Reason for Delay</u>

The Vendors argue that they are Indian companies unfamiliar with U.S. bankruptcy law and should not be penalized for failing to timely appreciate that they were entitled to administrative claims for goods delivered post-petition, and that such claims require the filing of a request or motion for payment rather than a proof of claim on Form 410.

The Plan Administrator responds that the Vendors conduct business with various international merchants, are well-versed in international transactions, and had no issues timely filing pro se proofs of claim, which at the very least evidences their competency to understand the general mechanics of the Debtors' bankruptcy case and to navigate the claims agent website.  The Plan Administrator contends that the Vendors should have been able to file their administrative claims timely.  The Plan Administrator further argues that it properly served notice of the objection to Prati's general unsecured claim on the email addresses and physical addresses listed by Prati on its proof of claim. (D.I. 453.)  Therefore, it argues that Prati's failure to timely respond to that objection should preclude it from doing so now.

Prati asserts that it has no record of receiving the

objection.  Prati argues that the presumption that it received the objection which was mailed to its address should not apply to international mail delivery, especially during a global pandemic. It also notes there were numerous delays in the U.S. Postal Service caused by the pandemic, as well as the additional burden on that system caused by the use of mail-in ballots during the national election.

The Court finds that the claimants are foreign vendors lacking knowledge of the intricacies of U.S. bankruptcy law who (though able to file proofs of claim, pro se) did not appreciate the necessity to file requests for allowance of administrative claims.  See Pioneer, 507 U.S. at 392 (finding that even if the reason for delay was in the control of the movant, it is not dispositive).

Even if Prati did receive the objection and the Vendors received notice of the Administrative Claim Bar Date, however, the Court concludes that it does not preclude the Court from considering the merits of their administrative claims under the Pioneer standard.

Therefore, the Court finds that this factor supports consideration of the administrative claims.

4.   Good Faith

The Plan Administrator does not question the good faith of the Vendors, and the Court finds that the Vendors, by filing

their unsecured proofs of claim, pro se, made a good faith effort to apprise the Debtors in a timely fashion that they had administrative claims for goods delivered post-petition. The Vendors should not be penalized for failing to appreciate the priority status of their claims or the necessity to file requests for administrative claims rather than proofs of claim.

Applying the Pioneer factors, the Court concludes that the Vendors meet the standard for consideration of their late-filed administrative claims, and for granting Prati's Motion for Reconsideration, "for cause" under sections 503(a) and 502(j). "[T]he lack of any [alleged or demonstrated] prejudice to the [Debtors] or to the interests of efficient judicial administration, combined with the good faith of [the claimants] and counsel, weigh strongly in favor of permitting the tardy claim[s]." Pioneer, 507 U.S. at 397-98.

C.   Merits of the Administrative Claims

Finding "cause" to consider the late-filed administrative claims under the excusable neglect standard, the Court will address whether goods physically received post-petition warrant administrative status under section 503(b)(1)(A).

The Plan Administrator argues that the Vendors are not entitled to administrative claims under section 503(b)(1)(A) because that section requires that the claim arise from a transaction with the debtor-in-possession that benefitted the

estate.   The Plan Administrator argues that claims arising from
contracts that had been fully performed by the Vendors (by
delivery of their goods to the carrier) at the time the
bankruptcy case commenced are not executory contracts and,
therefore, do not constitute a transaction with the debtor-in-
possession.

    In support, the Plan Administrator cites several cases.
See, e.g., In re Energy Future Holdings Corp., 990 F.3d 728, 741-
42 (3d Cir. 2021) (noting that "[a]n administrative expense claim
is entitled to priority under Section 503(b)(1)(A) if: (1) there
was a post-petition transaction between the claimant and the
estate, and (2) those expenses yielded a benefit to the estate."
(internal quotations omitted)); O'Brien, 181 F.3d at 532-33 ("For
a claim in its entirety to be entitled to first priority under [§
503(b)(1)(A)], the debt must arise from a transaction with the
debtor-in-possession . . . . [and] the consideration supporting
the claimant's right to payment [must be] beneficial to the
debtor-in-possession in the operation of the business." (quoting
Cramer v. Mammoth Mart, Inc., (In re Mammoth Mart, Inc.), 536
F.2d 950, 954 (1st Cir. 1976)); In re Women First Healthcare,
Inc., 332 B.R. 115, 123 (Bankr. D. Del. 2005) ("To establish an
administrative claim under this section, there must be (1) a
post-petition transaction between the claimant and the estate and
(2) a benefit to the estate.") (citing O'Brien, 181 F.3d at 532-
33)).

The Plan Administrator argues that the Vendors' claims cannot constitute transactions with the debtor-in-possession because their contracts were completed pre-petition when the Vendors delivered their goods to the shipper.  The Plan Administrator relies on the Uniform Commercial Code (the "UCC") which provides that title and risk of loss pass from the seller to the buyer when the goods are placed with the carrier.  UCC §§ 2-319, 2-320, 2-401(2), 2-504, 2-509(1)(a).  See, e.g., In re Mayer Pollock Steel Corp., 157 B.R. 952, 963 (Bankr. E.D. Pa. 1993) (disallowing § 503(b)(1)(A) administrative claim, despite the physical receipt of goods post-petition, because the seller's placement of goods with the common carrier transferred risk of loss to the buyer, and thus, completed the transaction for the sale of goods pre-petition); In re Nevins Ammunition, Inc., 79 B.R. 11, 17 (Bankr. D. Idaho 1987) (same).

The Vendors respond that most of the cases cited by the Plan Administrator are not persuasive because they dealt with situations that were obviously post-petition transactions.  See Energy Future, 990 F.3d at 741-42 (dispute as to administrative status of breakup fees owed under post-petition merger agreement); O'Brien, 181 F.3d at 532-33 (dispute as to administrative status of breakup fees contained in post-petition purchase agreement which court had not approved); Women First, 332 B.R. at 123, 125 (awarding administrative expense for actions

taken by winning bidder in preparation for purchase of debtors'
assets, prior to the rescission of the sale order, to the extent
those actions benefitted the estate).  They argue that those
cases did not hold, as the Plan Administrator suggests, that a
post-petition transaction was a requirement of an administrative
claim.

The Vendors argue, instead, that the Third Circuit decision
in Marin Motor Oil controls this case.  In re Marin Motor Oil,
Inc., 740 F.2d 220, 224-25 (3d Cir. 1984).  In Marin Motor Oil,
the Third Circuit held that in determining allowance of a
reclamation claim asserted under section 546(c) for goods sold,
'receipt' of goods under the UCC was the moment the debtor or its
bailee physically possessed the goods rather than the moment
title passes (by delivery to the common carrier).  Id.  See also
In re World Imports, Ltd., 862 F.3d 338, 342 (3d Cir. 2017)
(holding that 'receipt' of goods was the date of physical receipt
rather than the date title passes for purposes of administrative
priority under § 503(b)(9)).  The Vendors argue that those cases
acknowledged that even if title is transferred on delivery of
goods to the carrier, a seller retains the right to stop delivery
under section 2-705 of the UCC until the goods are physically
received by the debtor.

The Plan Administrator counters that Marin Motor Oil and
World Imports are distinguishable from the instant case because

13

they dealt with reclamation under section 546(c) or
administrative expenses under section 503(b)(9), not
administrative status under section 503(b)(1)(A).  <u>Marin Motor
Oil</u>, 740 F.2d at 224-25; <u>World Imports</u>, 862 F.3d at 342.  The
Plan Administrator notes that sections 546(c) and 503(b)(9) both
include the term "received" while section 503(b)(1)(A) does not.
Therefore, the Plan Administrator argues that the date goods are
"received" is germane to reclamation and section 503(b)(9)
claims, but not to section 503(b)(1)(A) claims.

The Court starts with the language of section 503(b)(1)(A),
which provides that administrative status shall be allowed for
"the actual, necessary costs and expenses of preserving the
estate . . . after the commencement of the case."  11 U.S.C. §
503(b)(1)(A).  Therefore, the Court concludes that the correct
standard for determination of an administrative claim under that
section is simply whether the Vendors provided a benefit to the
estate post-petition.  It does not require that there be a post-
petition contract.  In this case, it is undisputed that the
Vendors' goods were physically received by the Debtors after
commencement of the bankruptcy cases and were beneficial and
necessary to preserving the estate, as the Debtors resold those
goods and used the proceeds.

The Court finds the cases cited by the Plan Administrator do
not support its argument that an administrative claim requires a

post-petition contract.  None of those cases held that
administrative claims can only arise under an executory contract
at the commencement of the case or a contract entered into post-
petition with the debtor-in-possession.  While those cases
involved executory or post-petition contracts, the courts were
not asked to decide whether the <u>lack</u> of such a contract
prohibited the allowance of an administrative expense.  <u>See</u>
<u>Energy Future</u>, 990 F.3d at 741-42; <u>O'Brien</u>, 181 F.3d at 532-33;
<u>Women First</u>, 332 B.R. at 123, 125.

Instead, the Court concludes that <u>Marin Motor Oil</u> and <u>World
Imports</u> are more akin to the facts of this case because both
dealt with the sale and receipt of goods.  <u>See</u> <u>Marin Motor Oil</u>,
740 F.2d at 224-25; <u>World Imports</u>, 862 F.3d at 342.  In those
cases, the Third Circuit held that a contract for the sale of
goods is governed by the UCC under which the rights of buyers and
sellers are not entirely determined by the date title passes.
Under the UCC, the Court noted that sellers of goods retain the
right to stop delivery or reclaim the goods, even after the
passage of title, until the buyer physically receives the goods.
<u>Id.</u>

As a result, in <u>Marin Motor Oil</u>, the Third Circuit concluded
that goods physically received by the debtor with the relevant
reclamation period were entitled to priority under section
546(c), even though the goods were delivered to the carrier

15

before that date.  <u>Marin Motor Oil</u>, 740 F.2d at 224-25.
Similarly, in <u>World Imports</u>, the Third Circuit held that goods
physically received by the debtor within twenty days before the
bankruptcy petition were entitled to administrative priority
under section 503(b)(9) even though they were delivered to the
carrier before that period.  <u>World Imports</u>, 862 F.3d at 342.  The
Court finds that there is no good reason to give a claim for
goods physically received <u>on or after</u> the bankruptcy filing a
<u>lower</u> priority than a claim for goods received <u>before</u> the filing
date.

     Although section 503(b)(1)(A) does not use the word
"received" (as do sections 503(b)(9) and 546(c)), the Court does
not find that distinction relevant.  Section 503 accords
administrative status to many types of claims; it does not deal
exclusively with the sale of goods, as do sections 503(b)(9) and
546(c).  Therefore, it is not surprising that its language is
broader.

     As noted, the test for an administrative claim under section
503(b)(1)(A) is whether the goods or services provided post-
petition actually benefitted or preserved the estate.  Because
the goods sold by the Vendors were physically received and sold
by the Debtors after the commencement of the case, the Court
concludes that they satisfy that test.  <u>See, e.g.</u>, <u>In re S.
Montana Elec. Generation & Transmission Co-op., Inc.</u> No. 11-

16

62031-11, 2013 WL 85162, at *5 (Bankr. D. Mont. Jan. 8, 2013)
(finding that the portion of an asserted § 503(b)(9) claim
representing goods delivered post-petition should be treated as a
§ 503(b)(1)(A) claim).

Therefore, the Court concludes that the Vendors are entitled
to administrative claim status under section 503(b)(1)(A) for the
goods physically received by the Debtors post-petition.


IV.  <u>CONCLUSION</u>

For the foregoing reasons, the Court will grant Prati's
Motion to Reconsider Claim No. 1085 and its Motion for Allowance
of an Administrative Claim in the amount of $79,211.85.  The
Court will also allow DPI's Motion for Allowance of an
Administrative Claim in the amount of $33,657.33.

An appropriate Order is attached.


Dated: July 27, 2021                BY THE COURT:


                                    Mary F. Walrath
                                    United States Bankruptcy Judge