## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:                                          Chapter 11

Bluestem Brands, Inc.                           Case No. 20-10566
          Debtors

## MOTION FOR RELIEF FROM STAY

NOW COME Movants, Chayna Drapeau and Vincent Drapeau, individually and as

Parents and Next Friends of Ben Drapeau (hereinafter collectively "Movants"), by and through

their attorneys, Shaheen & Gordon, P.A., and in support of their Motion for Relief from Stay

state as follows:

I.

Movants have claims against Debtor, Bluestem Brands, Inc., for personal injuries arising

out of an incident while using Debtor's product, a "Chef's Mark® Pressure Cooker." The case is

in its initial stages and the amount of Movants' damages is not yet liquidated.

II.

Debtor has indicated that it carries a policy or policies of insurance which would provide

coverage for its liability, if any, in connection with any damages a trier of fact finds to be

sustained by Movants.

III.

Movants seek relief from the automatic stay for the limited purpose of continuing their

claims against Debtor to adjudicate Debtor's liability in connection with the injuries and

damages sustained by Movants.

IV.

As a condition of the requested relief, Movants stipulate and agree to limit the extent of

Movants' recovery against Debtor to the funds available under any and all insurance policies

which may provide coverage for Debtor's adjudicated liability, if any. Also, Movants seek

authority, to the extent that may be necessary, to execute, levy, and collect upon such judgment

as may be obtained by Movants in a civil action from Debtor's insurance carrier(s), only.

V.

On May 3, 2022, Movants filed their instant cause of action in the United States District

Court for the District of New Hampshire, referenced by docket number 1:22-cv-00150-AJ.

VI.

Movants' Complaint alleges violations of the New Hampshire Product Liability Act,

N.H. R.S.A. 507-D, et seq., New Hampshire Consumer Protection Act, N.H. R.S.A. 358-A, et

seq., and general counts of negligence. See **Exhibit A,** Complaint, attached.

VII.

Movants request that this Court grant limited relief from the automatic stay to permit the

adversary proceeding (Case No. 1:22-cv-00150-AJ) to proceed and to be heard by the United

States Court for the District of New Hampshire.

VIII.

This Court lacks jurisdiction pursuant to 28 U.S.C. 157 (b)(5) to determine liability and

to liquidate damages for personal injury tort actions.

IX.

If Movants' claims are established, they resulted from an alleged "personal injury tort," and 28 U.S.C. 157 (b)(2)(O) makes it clear that core proceedings do not include personal injury tort claims.

X.

That 28 U.S.C. 157 (b)(5) provides in relevant part as follows:

> The district court shall order that personal injury tort…claims shall be tried in the district court in which the bankruptcy court is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy court is pending.

XI.

To the extent that a portion of Movants' claims may not be based upon a personal injury tort, it makes sense to have one court determine their claims in order to avoid inconsistent results and to preserve judicial economy.

XII.

Movants allege that the Court should lift the automatic stay to permit the continuation of their claims against Debtor because neither Debtor nor the bankruptcy estate would be prejudiced by the continuation of the civil action. Additionally, the hardship to Movants caused by the continuation of the stay considerably outweighs any potential hardship caused to the Debtor by modification of the stay.

XIII.

Movants allege that the imposition of the automatic stay denies and damages the opportunity to litigate because further time delays will result in the aging of evidence and loss of witnesses. Movants further allege that cause exists for relief from the automatic stay to continue

with adversary proceedings (Case No. 1:22-cv-00150-AJ) since a jury trial has been requested, discovery is pending, and all issues are based entirely on state law.

XIV.

Movants have requested Debtor's assent to the underlying motion and, to date, have not received a response.

**WHEREFORE**, PREMISES CONSIDERED, Movants respectfully request that this Court grant relief from the Automatic Stay to permit Movants to continue to pursue their claim and proceed to judgment, if necessary, and to execute, levy, and collect upon such judgment as may be obtained by Movants to the extent of available policies of insurance only which provide coverage in such matters, and for such other and further relief to which the Court deems just and proper.

Dated: August 23, 2022                     Respectfully Submitted,

                                           */s/ D. Michael Noonan*
                                           D. Michael Noonan
                                           NH Bar No. 8214
                                           mnoonan@shaheengordon.com
                                           Attorney for the Movants
                                           Shaheen & Gordon, P.A.
                                           353 Central Ave., 2nd Floor
                                           P.O. Box 977
                                           Dover, NH 03821-0977
                                           (603) 749-5000

*Exhibit A*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

Chayna Drapeau and Vincent Drapeau,

Individually,

and as Parents and Next Friends of Ben

Drapeau,

      Plaintiff,

v.

Bluestem Brands, Inc. & BLST Operating

Company, LLC

      Defendants.

Civil Action: _____

## COMPLAINT AND DEMAND FOR JURY TRIAL

1. At all relevant times, the Plaintiffs, Chayna and Vincent Drapeau, individually and as parents and next friends of their minor son, Ben Drapeau, date of birth February 12, 2013, were residents of Somersworth, New Hampshire.

2. At all relevant times, Plaintiff Vincent Drapeau and Plaintiff Chayna Drapeau were lawfully married.

3. Defendant Bluestem Brands, Inc. was a Delaware corporation with its principal place of business located in Eden Prairie, Minnesota. While still in existence for purposes of bankruptcy, the company is essentially defunct, as it ceased operations upon the sale of all assets to BLST Operating Company, LLC.

4. Defendant BLST Operating Company, LLC is a Delaware corporation with its principal place of business located in Eden Prairie, Minnesota.

5. Upon information and belief, Defendant Bluestem Brands, Inc. conducted business under the brand name "Fingerhut." Fingerhut is otherwise not an independent, legal entity.

6. Defendant Bluestem Brands, Inc. d/b/a Fingerhut (herein collectively referred to as "Defendant Bluestem") conducted substantial business within the state of New Hampshire and thereby surrendered itself to the laws of the State of New Hampshire.

7. Defendant committed a tortious act in Strafford County, New Hampshire, as alleged herein, and is therefore subject to the jurisdiction of this Court.

## JURISDICTION

8. As Plaintiffs are each citizens of the State of New Hampshire, and Defendants are citizens of a state other than the State of New Hampshire, there is diversity of citizenship between the Plaintiffs and the Defendants.

9. Defendant Bluestem transacted business in the State of New Hampshire.

10. Defendant Bluestem directly marketed, advertised, and sold the "Chef's Mark® Pressure Cooker" that is the subject of this civil action to Plaintiff Chayna Drapeau by mailing her its "Fingerhut Catalog" to her residential address located at 70 Buffumsville Road, in Somersworth, New Hampshire, which Plaintiff used to order the subject "Chef's Mark® Pressure Cooker" via mail, which was shipped to her New Hampshire residence.

11. This District Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) as the parties are citizens of different States, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

2

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391, as a substantial part of the events giving rise to this claim occurred in the State of New Hampshire.

13. This District Court has personal jurisdiction as the Defendant Bluestem has transacted business in the State of New Hampshire.

## BANKRUPTCY PROCEEDINGS

14. On or about March 9, 2020, Defendant Bluestem filed for Chapter 11 bankruptcy protection.

15. Defendant Bluestem Brands, Inc. and Defendant BLST Operating Company, LLC negotiated a sale wherein BLST Operating Company, LLC purchased the assets of Defendant Bluestem Brands, Inc., in which the sale proceeded in bankruptcy court and was approved in the summer of 2020.

16. After approval of the sale, various steps were taken to complete the sale, which presumably included transfer of assets, vehicles, real estate, employees, retirement accounts, and other details to effectuate the transfer, as well as registration of trade names. It is expected that this took several months.

17. For example, BLST Operating Company, LLC filed application to use Defendant Bluestem's tradename "Chef's Mark" as a tradename on or about October 7, 2020, which was registered by the US Patent & Trademark Office.

18. There is continuity in operations and workforce between Bluestem Brands, Inc. and BLST Operating Company, LLC.

19. Upon information and belief, it is believed that most positions, and employees, including supervisors, were retained or given a chance to remain working for BLST Operating

Company, LLC, although it is believed some left voluntarily, choosing not to go with the new ownership.

20. After BLST Operating Company, LLC purchased Bluestem Brands, Inc., it began using all, or almost all, of the Bluestem Brands, Inc. sites of operation, adding them to the sites already used by BLST Operating Company, LLC in its business as part of the purchase.

21. BLST Operating Company, LLC took over possession and/or use of all of Bluestem Brands, Inc. equipment, products, computers, catalogs, manufacturing plants, vehicles, and other business assets.

22. BLST Operating Company, LLC produces the same products as Bluestem Brands, Inc. primarily small kitchen appliances, and provided related services, such as mail order delivery through the "Fingerhut Catalog."

23. While BLST Operating Company, LLC kept its own name, it adopted multiple Bluestem Brands, Inc. trade and brand names, including but not limited to "Chef's Mark," "Fingerhut," and "Haband." BLST Operating Company, LLC also conducts business under the "Bluestem Brands" name, and provides the same services, thereby operating as a single entity and Defendant Bluestem's successor.

### BLUESTEM BRANDS, INC.

24. Defendant Bluestem emerged as a major designer, distributor and manufacturer of small kitchen appliances, which it primarily sold through its mail-order catalog, commonly known as the "Fingerhut Catalog."

25. Upon information and belief, Defendant Bluestem's business consisted primarily of the development, manufacture, distribution, sale and promotion of branded and non-branded

4

small kitchen appliances, with other products such as home products, cookware, and cutlery, as emerging businesses for the Company.

26. Defendant Bluestem distributes its products under various brand names, including "Chef's Mark®", and primarily sells its products through its mail-order catalog, commonly known as the "Fingerhut Catalog."

27. Defendant Bluestem launched the "Chef's Mark®" brand name of consumer products, which now includes a line of electric pressure cookers, including the "Chef's Mark® Preferred Quality® Electric 10-Quart Electric Pressure Cooker."

28. Defendant Bluestem manufactured, marketed, distributed, and sold pressure cooker products under the brand name of "Chef's Mark®" to consumers in the United States, including consumers in New Hampshire.

## "FINGERHUT"

29. Defendant Bluestem operated the brand Fingerhut to provide consumers with various products, such as Defendant Bluestem's "Chef's Mark® Pressure Cookers," which it sold through its Fingerhut mail-order catalog ("Fingerhut Catalog").

30. By selling these products, Defendant Bluestem warranted that the products it sold on its "Fingerhut Catalog" would be free from defects in material and workmanship and would be fit and safe for each of the uses for which it is normally and reasonably intended.

31. Defendant Bluestem advertised its "Chef's Mark® Pressure Cookers," on the "Fingerhut Catalog" for the purpose of selling those products to consumers in the United States, including in the State of New Hampshire.

32. Through its "Fingerhut Catalog," Defendant Bluestem sold to consumers in the United States, including consumers in the State of New Hampshire, "Chef's Mark® Pressure Cookers."

33. "Chef's Mark® Pressure Cookers" did not comply with UL 136 and other applicable industry standards.

34. Despite not complying with UL 136 and industry standards, Defendant Bluestem continued to sell "Chef's Mark® Pressure Cookers."

35. Defendant Bluestem did not provide or post sale warnings of such defects and risks to consumers who had purchased "Chef's Mark® Pressure Cookers" from it.

## STANDARDS FOR PRESSURE COOKER SAFETY

36. UL (formerly known as Underwriter's Laboratories) is an industry supported business, that among other things, provides testing and engineering services to manufacturers. Its testing and certification services assist its customers to meet regulatory requirements and consumer demand for safe, trustworthy products.

37. Most retailers in the United States require that electrical appliance products they sell be UL Certified or have the equivalent of a UL Certification.

38. The applicable industry standard for safety of pressure cookers is found in UL 136 Standard for Safety, Pressure Cookers.

39. The American National Standard Institute (ANSI) oversees standards and conformity assessment activities in the United States.

40. ANSI's mission is to enhance both the global competitiveness of U.S. business and the U.S. quality of life by promoting and facilitating voluntary consensus standards and conformity assessment systems and safeguarding their integrity.

41. ANSI has approved UL 136 Standard for Safety, Pressure Cookers as ASNI/UL 136-2010.

42. UL 136 Standard for Safety, Pressure Cookers, provides, in part:

4.3 The cover shall be constructed to comply with the following:

   a. When the cover is opened the maximum normal operating pressure shall be released before the fastening means is fully disengaged;

   b. The cover shall be removable only after the pressure within the cooker is zero (0) psig; or

   c. The opening of the cover when the cooker is under pressure shall not result in hazardous displacement of the cover or the displacement of steam or water.

43. UL 136 Standard for Safety, Pressure Cookers, also provides, in part:

9.1 An ordinary user shall not be capable of manually defeating the holding action of the clamping device when the pressure in the cooker reaches a value that creates a risk of injury to persons. The propelling of a loosened cover and the escape of steam or hot water are examples of this risk.

44. Industry standards for safety of pressure cookers require that the subject "Chef's Mark® Pressure Cooker" comply with ANSI/UL 136-2010; i.e. UL 136 Standard for Safety, Pressure Cookers.

45. The "Chef's Mark® Pressure Cooker" was not certified to comply with UL 136 Standard for Safety, Pressure Cookers.

46. Defendant Bluestem did not require that its "Chef's Mark® Pressure Cooker" comply with UL 136 Standard for Safety, Pressure Cookers.

47. Defendant Bluestem did not submit its "Chef's Mark® Pressure Cooker" to Underwriters Laboratories for certification pursuant to UL 136 Standard for Safety, Pressure Cookers.

48. Prior to the sale of the subject "Chef's Mark® Pressure Cooker," Defendant Bluestem knew or should have known that its "Chef's Mark® Pressure Cookers" did not to comply with ASNI/UL 136-2010, i.e., UL 136 Standard for Safety, Pressure Cookers.

## SUBJECT CHEF'S MARK PREFERRED QUALITY® 10-QUART ELECTRIC
## PRESSURE COOKER

49. Plaintiff Chayna Drapeau, mother of minor Plaintiff Ben Drapeau, was and is a resident of Somersworth, New Hampshire, and at all times relevant hereto was and is the owner of a "Chef's Mark Preferred Quality® 10-Quart Electric Pressure Cooker," which is the subject of this action (hereinafter "Subject Pressure Cooker").

50. The Subject Pressure Cooker is a Model No. XLTX100-DW, with a date code of 09/2019. [See figure 1.]


(Figure 1)

51. Defendant Bluestem designed the Subject Pressure Cooker.

52. Defendant Bluestem manufactured the Subject Pressure Cooker, or had it manufactured for it under a contract or supply agreement with a third party that is not subject to the jurisdiction of this court.

53. Defendant Bluestem had the Subject Pressure Cooker, labeled with the brand name "Chef's Mark®," a name that is a registered trademark of Defendant Bluestem.

54. Defendant Bluestem imported to the United States the Subject Pressure Cooker, or had it imported to the United States for it under a contract or supply agreement with a third party that is not subject to the jurisdiction of this court and that had no role in the design or manufacture of the product.

55. Defendant Bluestem marketed its "Chef's Mark Preferred Quality® 10-Quart Electric Pressure Cooker," including the Subject Pressure Cooker, in its "Fingerhut Catalog."

56. Defendant Bluestem distributed the Subject Pressure Cooker, or had it distributed for it under a contract or supply agreement with a third party that is not subject to the jurisdiction of this court.

57. Defendant Bluestem sold the Subject Pressure Cooker through its "Fingerhut Catalog."

58. Prior to the sale of the Subject Pressure Cooker, Defendant Bluestem knew or should have known that the lid of the "Chef's Mark Preferred Quality® 10-Quart Electric Pressure Cooker" could be opened while the cooker's contents were under pressure.

59. The Subject Pressure Cooker did not comply with the requirements of UL 136 Standard for Safety, Pressure Cookers.

60. Prior to the sale of the Subject Pressure Cooker, Defendant Bluestem knew that its "Chef's Mark Preferred Quality® 10-Quart Electric Pressure Cookers" did not comply with UL 136 Standard for Safety, Pressure Cookers.

61. Prior to the sale of the Subject Pressure Cooker, Defendant Bluestem knew that the lid of the "Chef's Mark Preferred Quality® 10-Quart Electric Pressure Cookers" did not comply with industry standards for the safety of pressure cookers.

62. Prior to the sale of the Subject Pressure Cooker, Defendant Bluestem did not stop the distribution or sale of the "Chef's Mark Preferred Quality® 10-Quart Electric Pressure Cookers."

63. Prior to August 22, 2021, Defendant Bluestem knew that the lid of the "Chef's Mark Preferred Quality® 10-Quart Electric Pressure Cookers" did not comply with the requirements of UL 136.

64. Prior to August 22, 2021, Defendant Bluestem knew that the lid of the "Chef's Mark Preferred Quality® 10-Quart Electric Pressure Cookers" did not comply with industry standards for the safety of pressure cookers.

65. Prior to August 22, 2021, Defendant Bluestem did not warn consumers that the lid of the "Chef's Mark Preferred Quality® 10-Quart Electric Pressure Cookers" may open while the cooker's contents were under pressure.

66. Prior to August 22, 2021, Defendant Bluestem did not recall the "Chef's Mark Preferred Quality® 10-Quart Electric Pressure Cookers" even though it knew or should have known that the lid may open while the cooker's contents were under pressure.

67. Prior to the manufacture of the Subject Pressure Cooker, safer alternative designs for the lid locking system and safety features were feasible, and in fact existed in the pressure cooker products of Defendant Bluestem's competitors.

68. Prior to the manufacture of the Subject Pressure Cooker, Defendant Bluestem chose not to incorporate into the design and manufacture of its "Chef's Mark Preferred Quality® 10-Quart Electric Pressure Cookers" available safer alternative designs for the lid locking system and safety features.

## FACTUAL ALLEGATIONS

69. On February 14, 2020, Ms. Chayna Drapeau purchased the Subject Pressure Cooker, as further described above and identified as a "Chef's Mark Preferred Quality® 10-Quart Electric Pressure Cooker," Model No. XLTX100-DW.

70. Plaintiff purchased the Subject Pressure Cooker from Defendant Bluestem's Fingerhut Catalog, which was mailed to her residential address of 70 Buffumsville Road, in Somersworth, New Hampshire, on February 17, 2020.

71. Defendant Bluestem was in the business of designing, manufacturing, distributing, marketing, and selling cookers and other household appliances.

72. Defendant Bluestem, through its brand "Fingerhut," is engaged in the business of operating an online retail store and mail-order catalogs, which it directly mails to consumers in New Hampshire, through which Defendant Bluestem advertises, markets, distributes, and sells or sold a wide range of consumer goods, including "Chef's Mark® Pressure Cookers."

73. Defendant Bluestem sold to Plaintiff Chayna Drapeau the pressure cooker that is the subject of this civil action.

74. At all times relevant, Plaintiffs were using the Subject Pressure Cooker in a foreseeable, prudent, and intended fashion.

75. On August 22, 2021, while at her home in Somersworth, New Hampshire, Plaintiff Chayna Drapeau was using the Subject Pressure Cooker to make a stew with her son, Ben Drapeau.

76. Plaintiff Chayna Drapeau closed and locked the lid, and otherwise operated the product according to the instructions for the operation of the product that are contained in the "Chef's Mark® Pressure Cooker" User's Manual.

77. While cooking the stew according to the instructions, Plaintiff Chayna Drapeau heard the release valve signaling.

78. Plaintiff Chayna Drapeau moved the operating valve to the steam release position. She waited several minutes, and then proceeded to unlock the lid of the Subject Pressure Cooker.

79. Unbeknownst to Plaintiff, the cover of the Subject Pressure Cooker was able to be opened and the fastening means was disengaged before the maximum normal operating pressure was released.

80. Thus, when Plaintiff was using the Subject Pressure Cooker, the cover was removable before the pressure within the cooker was zero (0) psig.

81. As a result, when Plaintiff Chayna Drapeau unlocked the lid of the Subject Pressure Cooker, the lid exploded off the top of the pressure cooker under pressure, causing the super-heated depressurized contents to erupt from the pot and onto her, and her child's bodies. The contents soaked through Plaintiffs' clothing and severely burned Plaintiffs' bodies.

82. When Plaintiff was using the Subject Pressure Cooker, the opening of the cover resulted in hazardous displacement of the cover, including the displacement of steam.

83. On August 22, 2021, an ordinary user of the Subject Pressure Cooker was capable of manually defeating the holding action of the clamping device when the pressure in the cooker had reached a value that created a risk of injury to persons.

84. On August 22, 2021, due to a defect in its design, manufacture and/or warnings, the lid of the Subject Pressure Cooker opened while the cooker's contents were under pressure.

85. On August 22, 2021, as the lid of the Subject Pressure Cooker opened, its super-heated contents and steam erupted from the pressure cooker, resulting in severe burns to Plaintiffs' bodies. [ See Figures 2, 3, and 4 below.]



(Fig. 2; photographed in 2021)   (Fig. 3; photographed in 2021)   (Fig. 4; photographed in 2021)

86. As a direct and proximate result of the malfunction of the Subject Pressure Cooker, Plaintiff Chayna Drapeau, and her minor son, Ben Drapeau, suffered severe and permanent burns, scarring, disfigurement, pain and suffering, and severe emotional distress which requires and will continue to require medical treatment.

87. Plaintiffs bring this civil action to recover for the severe and permanent injuries that Plaintiff Chayna Drapeau and her minor son suffered when the defective Subject Pressure Cooker malfunctioned and spewed its scalding hot contents on their bodies.

13

88. As a direct and proximate result of the malfunction of the Subject Pressure Cooker, Plaintiff Chayna Drapeau, and her minor son, Ben Drapeau, suffered severe second-degree burns to their bodies.

89. The "Chef's Mark® Pressure Cooker" User's Manual states that "[t]he lid will only release when the pressure is fully released."

90. Despite this claim, Plaintiffs' Subject Pressure Cooker lid did, in fact, open before all of the pressure was released inside of the pot of the pressure cooker, resulting in an eruption of its super-heated contents, which spewed out of the pot and onto Plaintiffs' bodies, seriously injuring them.

91. As a direct and proximate result of these defects, Plaintiff Chayna Drapeau, and her minor son, Ben Drapeau, suffered severe burns to their bodies, permanent disfigurement, and lasting pain.

92. Prior to August 22, 2021, Defendant Bluestem knew or should have known that:

   a. "Chef's Mark® Pressure Cookers" were opening while the contents were under pressure, causing severe, scalding injuries to the people using the product;

   b. That the design of the "Chef's Mark® Pressure Cookers" was inadequate to prevent the lid from opening when the contents were still under pressure;

   c. That its testing and inspections of "Chef's Mark® Pressure Cookers" was inadequate to determine which products had been manufactured in such a way that the lid could open when under pressure;

   d. That it did not adequately warn consumers that "Chef's Mark® Pressure Cookers" could be opened while under pressure; and,

    e.  That the claims that had been made that "Chef's Mark® Pressure Cookers" could not open when the contents were under pressure were false.

93. In spite of the above, Defendant Bluestem continued to sell defective "Chef's Mark® Pressure Cookers," and it did so without providing post sale warnings to consumers that "Chef's Mark® Pressure Cookers" could open when under pressure.

<u>**WANTON AND RECKLESS CONDUCT**</u>

94. Plaintiffs hereby incorporate by reference each and every allegation contained above as though fully set forth herein.

95. The acts and conduct of Defendant Bluestem, set forth in this Complaint, were attended by circumstances of malice, or willful and wanton conduct, and/or in reckless disregard of the consequences from which malice may be inferred and showed a total disregard for human life and human suffering. This conduct included, but was not limited to:

    a.  guaranteeing that the cooker will never open while it's under pressure, when in fact it could, and the Defendant knew that it could open under pressure;

    b.  selling a pressure cooker that claimed in its User's Manual that the lid cannot open when under pressure, when in fact it could, and the Defendant knew that it could;

    c.  selling a pressure cooker that claimed in its marketing materials the lid cannot open when under pressure, when in fact it could, and the Defendant knew that it could;

    d.  selling a pressure cooker that claimed the lid cannot open when under pressure, when in fact testing had proven that statement was in fact not true;

e.  selling a pressure cooker that claimed the lid cannot open when under pressure, when in fact it was not designed with devices that prevented the lid from opening under pressure;

f.  continuing to distribute, market, and sell a pressure cooker that claimed the lid cannot open when under pressure, when it knew or should have known consumers were at risk of injury caused by the lid opening when under pressure; and,

g.  not conducting inspection, sampling, or testing of products to assure that the quality of the products it sold conformed with industry standards.

96. The willful and wanton conduct of Defendant Bluestem was conduct purposefully committed which Defendant Bluestem must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly Plaintiffs.

97. Defendant Bluestem continued its conduct and behavior, as set forth in this civil action, in a willful and wanton manner, against other persons who purchased these defective "Chef's Mark® Pressure Cookers" from it.

## COUNT I—STRICT PRODUCT LIABILITY

### N.H. R.S.A. 507-D, et seq.

**Chayna Drapeau, Individually, and with Vincent Drapeau as Parents and Next Friends of Ben Drapeau Against Defendant Bluestem**

98. Plaintiffs hereby incorporate by reference each and every allegation contained above as though fully set forth herein.

99. Defendant Bluestem engaged in the business of designing, manufacturing, importing, marketing and selling pressure cookers, including the "Chef's Mark® Pressure Cooker," for use and consumption in New Hampshire.

100.    Defendant Bluestem sold the "Chef's Mark® Pressure Cooker" for use by consumers in the state of New Hampshire.

101.    Thus, Defendant Bluestem is subject to the provisions of the New Hampshire Product Liability Act, R.S.A. 507-D, *et. seq.*, for products that they sold to citizens of the State of New Hampshire.

102.    The "Chef's Mark® Pressure Cooker" purchased by Plaintiff Chayna Drapeau is a product covered by the New Hampshire Product Liability Act.

103.    Plaintiffs were "users" of the "Chef's Mark® Pressure Cooker", as the word "user" is defined by New Hampshire Product Liability Actions, R.S.A. 507-D:1(iii).

104.    Pursuant to the New Hampshire Product Liability Act, Defendant Bluestem owed a duty to Plaintiffs to sell a product that was reasonably safe in construction, which did not materially deviate from applicable design specifications, or otherwise deviate in some material way from otherwise identical units.

105.    Pursuant to the New Hampshire Product Liability Act, Defendant Bluestem owed a duty to Plaintiffs to sell a product that was not unreasonably dangerous.

106.    Pursuant to the New Hampshire Product Liability Act, Defendant Bluestem owed a duty to Plaintiffs to sell a product that conformed to its implied warranties, including, but not limited to, the implied warranty that the products it sold were reasonably safe for use by consumers.

107.    Defendant Bluestem had a duty to sell a "Chef's Mark® Pressure Cooker" that was neither defective nor unreasonably dangerous when put to the use for which it was designed, manufactured, distributed, marketed and sold.

108.    The Subject Pressure Cooker purchased from Defendant Bluestem and used by Plaintiffs was in a defective condition and unreasonably dangerous to the user or consumer at the time the Subject Pressure Cooker left the possession of Defendant Bluestem, and at the time the device entered the stream of commerce, because of, but not limited to, the following:

   a.  the Subject Pressure Cooker was not reasonably safe as intended to be used;

   b.  the Subject Pressure Cooker contained design defects, including that the lid could be opened when the pot was under pressure;

   c.  the Subject Pressure Cooker contained manufacturing defects, including that the lid could be opened when the pot was under pressure, which was not intended in its design and specifications;

   d.  the design of the "Chef's Mark® Pressure Cooker" presented risks which exceeded the utility of the product;

   e.  the "Chef's Mark® Pressure Cooker" was dangerous to an extent beyond which would be contemplated by the ordinary consumer, and did not meet consumer expectations;

   f.  the "Chef's Mark® Pressure Cooker" did not comply with applicable UL Standards;

   g.  the "Chef's Mark® Pressure Cooker" did not comply with applicable ANSI Standards;

h.  the "Chef's Mark® Pressure Cooker" did not comply with applicable industry standards;

i.  a reasonably prudent seller, given knowledge of the "Chef's Mark® Pressure Cooker's" condition, would not have marketed, distributed or sold the device;

j.  the "Chef's Mark® Pressure Cooker" was not appropriately or adequately tested before its sale;

k.  the "Chef's Mark® Pressure Cooker" purchased and used by Plaintiffs from Defendant did not warn that the lid could open when the pot was under pressure, and that serious injury could result from opening under pressure;

l.  the "Chef's Mark® Pressure Cooker" did not have adequate and necessary warnings and instructions to allow it to be used safely given the design and/or manufacturing defects and dangers inherent in the the "Chef's Mark® Pressure Cooke;"

m.  the "Chef's Mark® Pressure Cooker" purchased and used by Plaintiffs from Defendant did not warn that in spite of devices intended to prevent it from opening under pressure, the pot may still be under pressure, and that serious injury could result from opening under pressure; and,

n.  the "Chef's Mark® Pressure Cooker" marketing, instructions, and packaging, misrepresented its safety characteristics and the inability to open when the pot was under pressure.

109.    Had Defendant Bluestem adequately tested the "Chef's Mark® Pressure Cookers" they were selling they would have discovered:

    a. the lid could open when the "Chef's Mark® Pressure Cooker" was still under pressure;

    b. the safety devices were inadequate to prevent the lid from opening when the "Chef's Mark® Pressure Cooker" was still pressurized; and,

    c. that when the lid of the "Chef's Mark® Pressure Cooker" opens under pressure, steam and the super-heated contents will erupt from the pot and cause severe scalding injuries to anyone near the "Chef's Mark® Pressure Cooker."

110. The Subject "Chef's Mark® Pressure Cooker" was defective at the time it was sold by Defendant Bluestem or at the time it left Defendant's control.

111. The "Chef's Mark® Pressure Cooker" purchased by Plaintiff Chayna Drapeau from Defendant was expected, and did, reach the consumer without substantial change in the condition in which it was sold.

112. Plaintiff Chayna Drapeau, and her minor son, Ben Drapeau, were persons who would reasonably be expected to use or be affected by the "Chef's Mark® Pressure Cooker," and used the Subject "Chef's Mark® Pressure Cooker" in a reasonably foreseeable fashion.

113. Plaintiffs, by the exercise of reasonable care, could not have discovered the "Chef's Mark® Pressure Cooker's" defects and perceived its danger.

114. The defects in the "Chef's Mark® Pressure Cooker" purchased by Plaintiff Chayna Drapeau from Defendant Bluestem directly and proximately caused the injuries to Plaintiffs, as set forth in this Complaint.

115. Plaintiffs, by the exercise of reasonable care, could not have avoided the injury.

116.     As a direct and proximate result of the conduct of Defendant Bluestem, as set forth herein, Plaintiffs suffered the injuries and damages as set forth in this Complaint.

## COUNT II—NEGLIGENCE

**Chayna Drapeau, Individually, and with Vincent Drapeau as Parents and Next Friends of Ben Drapeau Against Defendant Bluestem**

117.     Plaintiffs hereby incorporate by reference each and every allegation contained above as though fully set forth herein.

118.     Defendant Bluestem was negligent in designing the "Chef's Mark® Pressure Cooker" in that Defendant failed to exercise reasonable care to prevent the product from creating an unreasonable risk of harm to a person who might reasonably be expected to use or be affected by the product while it was being used in the manner Defendant might reasonably have expected.

119.     Defendant Bluestem was negligent in manufacturing the "Chef's Mark® Pressure Cooker" in that Defendant failed to exercise reasonable care to prevent the product from creating an unreasonable risk of harm to a person who might reasonably be expected to use or be affected by the product while it was being used in the manner Defendant might reasonably have expected.

120.     Defendant Bluestem was negligent in importing the "Chef's Mark® Pressure Cooker" in that Defendant failed to exercise reasonable care to prevent the product from creating an unreasonable risk of harm to a person who might reasonably be expected to use or be affected by the product while it was being used in the manner Defendant might reasonably have expected.

121.    Defendant Bluestem was negligent in marketing the "Chef's Mark® Pressure Cooker" in that Defendant failed to exercise reasonable care to prevent the product from creating an unreasonable risk of harm to a person who might reasonably be expected to use or be affected by the product while it was being used in the manner Defendant might reasonably have expected.

122.    Defendant Bluestem was negligent in distributing "Chef's Mark® Pressure Cooker" in that Defendant failed to exercise reasonable care to prevent the product from creating an unreasonable risk of harm to a person who might reasonably be expected to use or be affected by the product while it was being used in the manner Defendant might reasonably have expected.

123.    Defendant Bluestem was negligent in selling the "Chef's Mark® Pressure Cooker" in that Defendant failed to exercise reasonable care to prevent the product from creating an unreasonable risk of harm to a person who might reasonably be expected to use or be affected by the product while it was being used in the manner Defendant might reasonably have expected.

124.    Defendant Bluestem was negligent in failing to provide adequate and necessary warnings and instructions, both in content and presentation, to allow the "Chef's Mark® Pressure Cooker" to be used safely given the design and/or manufacturing defects and dangers inherent in the "Chef's Mark® Pressure Cooker."

125.    Defendant Bluestem was negligent in not requiring its "Chef's Mark® Pressure Cooker" to comply with the industry standard, ASNI/UL 136-2010, UL 136 Standard for Safety, Pressure Cookers.

126.     Defendant Bluestem was negligent in not requiring that its "Chef's Mark® Pressure Cooker" be certified by UL as complying with UL 136 Standard for Safety, Pressure Cookers.

127.     Defendant Bluestem was negligent in not requiring that its "Chef's Mark® Pressure Cooker" be submitted by the manufacturer to Underwriter's Laboratories for certification pursuant to UL 136 Standard for Safety, Pressure Cookers.

128.     Defendant Bluestem was negligent in that prior to the sale of the "Chef's Mark® Pressure Cooker" it knew that its "Chef's Mark® Pressure Cooker" did not comply with the industry standard ASNI/UL 136-2010, UL 136 Standard for Safety, Pressure Cookers.

129.     In addition to the above negligence, the conduct, actions, and failure to act, of Defendant, was negligent in that:

   a.  the "Chef's Mark® Pressure Cooker" as designed allowed the lid to open when the pot was under pressure, when that was not the intent of the design;

   b.  the "Chef's Mark® Pressure Cooker" as designed had devices that did not prevent the lid from opening when the pot was under pressure, when the intent of the "Chef's Mark® Pressure Cooker design was that the lid cannot open when the pot is under pressure;

   c.  the "Chef's Mark® Pressure Cooker" had defects that were not discovered before the product left the control of the Defendant, which defects allowed the lid to open when the pot was under pressure, contrary to its intended design;

   d.  the "Chef's Mark® Pressure Cooker" was not adequately tested to ensure that it would perform as intended, and that the lid cannot open when the pot was under pressure;

e.  the "Chef's Mark® Pressure Cooker" was not adequately tested to ensure that it would perform as represented, and that the lid cannot open when the pot was under pressure;

f.  the "Chef's Mark® Pressure Cooker" did not comply with applicable UL Standards;

g.  the "Chef's Mark® Pressure Cooker" did not comply with applicable ANSI Standards;

h.  the "Chef's Mark® Pressure Cooker" did not comply with applicable industry standards;

i.  The lid of certain "Chef's Mark® Pressure Cookers" may open while the cooker's contents are under pressure;

j.  The cover of certain "Chef's Mark® Pressure Cookers" may open when the maximum normal operating pressure has not been released before the fastening means is fully disengaged;

k.  The cover of certain "Chef's Mark® Pressure Cookers" is removable before the pressure within the cooker is zero (0) psig;

l.  The cover of certain "Chef's Mark® Pressure Cookers" may open under pressure resulting in the hazardous displacement of the cover, including the displacement of steam or water; and,

m.  An ordinary user of certain "Chef's Mark® Pressure Cookers" may be capable of manually defeating the holding action of the clamping device when the pressure in the cooker has reached a value that creates a risk of injury to persons.

130.     Notwithstanding the above, Defendant Bluestem continued selling "Chef's Mark®
Pressure Cookers" in blatant disregard of public health and safety, and Defendant
Bluestem did nothing to warn or protect consumers and users, including Plaintiffs, of
foreseeable harm from use of "Chef's Mark® Pressure Cookers."

131.     Notwithstanding the above, Defendant Bluestem did nothing to provide post-sale
warnings to consumers and users, including Plaintiffs.

132.     Defendant Bluestem's conduct of continuing to sell, the "Chef's Mark® Pressure
Cookers" into the stream of commerce, and to not warn or protect consumers, was
motivated by financial considerations.

133.     The conduct, actions, and failure to act, of Defendant Bluestem were negligent in
that they failed to do adequate quality assurance inspection, sampling, or testing prior to
selling and delivering the "Chef's Mark® Pressure Cooker."

134.     The conduct, actions, and failure to act of Defendant Bluestem were negligent in
that they claimed inability of the lid to open when the product was under pressure, were
false, yet they continued to sell these products with such claims, which Defendant Bluestem
knew or reasonably should have known, were false.

135.     The conduct, actions, and failure to act of Defendant Bluestem, as set forth above,
were negligent in that they failed to provide post-sale warnings to consumers.

136.     In the exercise of reasonable care, Defendant Bluestem knew or should have known
that the "Chef's Mark® Pressure Cooker" in general, and Plaintiffs' Subject Pressure
Cooker specifically, was negligently designed, negligently tested, negligently
manufactured, failed to comply with applicable industry standards, misrepresented its

safety and safety devices and characteristics, and otherwise was defective and likely to cause serious bodily injury to consumers when being used as reasonably expected.

137.     Pursuant to the provisions of the New Hampshire Product Liability Act, R.S.A. 507-D, *et. seq.*, Defendant Bluestem engaged in the development, manufacture, construction, design, formula, preparation, assembly, testing, warning, instructing, advertising, marketing, certifying, packaging, and labeling of "Chef's Mark® Pressure Cookers," that were used by citizens of the State of New Hampshire in the State of New Hampshire, and because Defendant Bluestem advertised, marketed, and sold "Chef's Mark® Pressure Cookers" in the State of New Hampshire, and it is thereby liable to Plaintiffs for the claims asserted in this count of the Complaint.

138.     As a direct and proximate result of the negligence of Defendant Bluestem, as set forth above, Plaintiffs suffered the injuries and damages as set forth in this Complaint.

## COUNT III—BREACH OF EXPRESS WARRANTY

**Chayna Drapeau, Individually, and with Vincent Drapeau as Parents and Next Friends of Ben Drapeau Against Defendant Bluestem**

139.     Plaintiffs hereby incorporate by reference each and every allegation contained above as though fully set forth herein.

140.     Defendant Bluestem expressly warranted that its "Chef's Mark® Pressure Cookers" were safe and effective to members of the consuming public, including Plaintiff. Moreover, Defendant Bluestem expressly warranted that the lid of its "Chef's Mark® Pressure Cookers" "will only release when the pressure is fully released."

141.     Members of the consuming public, including consumers such as Plaintiff were the intended third-party beneficiaries of the warranty.

142.    Defendant Bluestem marketed, promoted, and sold its "Chef's Mark® Pressure Cookers" as a safe product, complete with safety measures.

143.    Defendant Bluestem's "Chef's Mark® Pressure Cookers" do not conform to these express representations because the lid can be removed using normal force while the units remain pressurized, despite the appearance that the pressure has been released, making the "Chef's Mark® Pressure Cookers" not safe for use by consumers.

144.    Defendant Bluestem breached its express warranty in one or more of the following ways:

a.    The "Chef's Mark® Pressure Cookers" as designed, manufactured, sold and/or supplied by Defendant Bluestem, were defectively designed, and placed into the stream of commerce by Defendant Bluestem in a defective and unreasonably dangerous condition;

b.    Defendant Bluestem failed to warn and/or place adequate warnings and instructions on its "Chef's Mark® Pressure Cookers;"

c.    Defendant Bluestem failed to adequately test its "Chef's Mark® Pressure Cookers;" and,

d.    Defendant Bluestem failed to provide timely and adequate post-marketing warnings and instructions after they knew the risk of injury from its "Chef's Mark® Pressure Cookers."

145.    Plaintiff Chayna Drapeau purchased and used the "Chef's Mark® Pressure Cooker" with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of cooking.

146.    Plaintiffs' injuries were the direct and proximate result of Defendant Bluestem's breach of its express warranties.

147.    As a direct and proximate result of the negligence of Defendant Bluestem, as set forth above, Plaintiffs suffered the injuries and damages as set forth in this Complaint.

## COUNT IV—BREACH OF IMPLIED WARRANTY

**Chayna Drapeau, Individually, and with Vincent Drapeau as Parents and Next Friends of**

**Ben Drapeau Against Defendant Bluestem**

148.     Plaintiffs hereby incorporate by reference each and every allegation contained

above as though fully set forth herein.

149.     At the time Defendant Bluestem marketed, distributed, and sold its "Chef's Mark®

Pressure Cooker" to Plaintiff, Defendant Bluestem warranted that its Pressure Cookers

were merchantable and fit for the ordinary purposes for which they were intended.

150.     Members of the consuming public, including consumers such as Plaintiff, were

intended third-party beneficiaries of the warranty.

151.     Defendant Bluestem's "Chef's Mark® Pressure Cookers" were not merchantable

and fit for their ordinary purpose, because they had the propensity to lead to the serious

personal injuries as described herein in this Complaint

152.     The "Chef's Mark® Pressure Cooker" Defendant Bluestem sold to Plaintiffs was

not of merchantable quality, including, but not limited to:

     a)     "Chef's Mark® Pressure Cooker" would not pass without objection

         in the trade under the contract description;

     b)     The "Chef's Mark® Pressure Cooker" is not of fair average quality;

     c)     The "Chef's Mark® Pressure Cooker" is not fit for the ordinary

         purposes for which such a good is used;

     d)     The "Chef's Mark® Pressure Cooker" does not run within the

         variations permitted of even kind, quality, or quantity;

e)   The "Chef's Mark® Pressure Cooker" was not adequately contained, packaged, or labeled; and,

f)   The "Chef's Mark® Pressure Cooker" does not conform to the promises or affirmations of fact made by Defendant Bluestem.

153.   Plaintiffs used the "Chef's Mark® Pressure Cooker" for its intended purpose, and in a reasonably foreseeable manner.

154.   Plaintiffs' "Chef's Mark® Pressure Cooker" did not conform with the implied warranty of merchantability in that it could be opened when under pressure.

155.   Pursuant to the provisions of the New Hampshire Product Liability Act, R.S.A. 507-D, *et. seq.*, Defendant Bluestem engaged in the development, manufacture, construction, design, formula, preparation, assembly, testing, warning, instructing, advertising, marketing, certifying, packaging, and labeling of "Chef's Mark® Pressure Cookers," that were used by citizens of the State of New Hampshire in the State of New Hampshire, and because Defendant Bluestem advertised, marketed, and sold "Chef's Mark® Pressure Cookers" in the State of New Hampshire, and it is thereby liable to Plaintiffs for the claims asserted in this count of the Complaint.

156.   As a direct and proximate result of the breach of the implied warranty of merchantability, as set for the herein, and as set forth above, Plaintiffs suffered the injuries and damages set forth in this Complaint.

## COUNT V—VIOLATION OF THE
## NEW HAMPSHIRE CONSUMER PROTECTION ACT

### N.H. R.S.A. 358-A, et seq.

**Chayna Drapeau, Individually, and with Vincent Drapeau as Parents and Next Friends of**

**Ben Drapeau Against Defendant Bluestem**

157.    Plaintiffs hereby incorporate by reference each and every allegation contained

above as though fully set forth herein.

158.    The claims and statements regarding the performance and safety features of the

"Chef's Mark® Pressure Cooker" that accompanied the product at the time of its sale, as

set forth above, were false.

159.    The claims and statements regarding the performance and safety features of the

"Chef's Mark® Pressure Cooker" that accompanied the product at the time of its sale, as

set forth above, were deceptive trade practices and thus acts unlawful, as defined in N.H.

R.S.A. 358-A:2(VII).

160.    Pursuant to the provisions of the New Hampshire Product Liability Act, R.S.A.

507-D, *et. seq.*, Defendant Bluestem engaged in the development, manufacture,

construction, design, formula, preparation, assembly, testing, warning, instructing,

advertising, marketing, certifying, packaging, and labeling of "Chef's Mark® Pressure

Cookers," that were used by citizens of the State of New Hampshire in the State of New

Hampshire, and because Defendant Bluestem advertised, marketed, and sold "Chef's

Mark® Pressure Cookers" in the State of New Hampshire, and it is thereby liable to

Plaintiffs for the claims asserted in this count of the Complaint.

161.    As a direct and proximate result of Defendant Bluestem's deceptive trade practices,

Plaintiffs are entitled to all of the damages and remedies provided to New Hampshire

consumers pursuant to N.H. R.S.A. 358-A, including but not limited to treble damages,

and the costs of this action, together with reasonable attorney fees as determined by the Court.

## COUNT VI—SUCCESSOR LIABILITY

### Chayna Drapeau, Individually, and with Vincent Drapeau as Parents and Next Friends of Ben Drapeau Against Defendant BLST Operating Company, LLC

162.    Plaintiffs hereby incorporate by reference each and every allegation contained above as though fully set forth herein.

163.    Defendant BLST Operating Company, LLC, is liable as the corporate successor to the now-defunct company, Defendant Bluestem, under the laws of New Hampshire.

164.    In New Hampshire, liability may be imposed on a successor corporation where:

> (1) there is an express or implied assumption of liability; (2) the transaction amounts to consolidation or merger; (3) the transaction was fraudulent; (4) some of the elements of a purchaser in good faith were absent; and (5) the transferee corporation was a mere continuation or reincarnation of the old corporation.

MacCleery v. T.S.S. Retail Corp., 882 F. Supp. 13, 16 (D.N.H. 1994).

165.    Upon information and belief, in its asset sale, BLST Operating Company, LLC expressly or impliedly agreed to assume Defendant Bluestem's liabilities.

166.    In BLST Operating Company, LLC's purchase, there has been continuity of assets, physical location, and general business operations. Upon information and belief, there has also been a continuity of shareholders through BLST Operating Company, LLC's purchase of Defendant Bluestem, and that BLST Operating Company, LLC assumed those liabilities and obligations of its predecessors necessary for the uninterrupted continuation of normal business operations., thereby acting more akin to a de facto merger or consolidation than a true asset sale.

167.    Furthermore, since purchasing Defendant Bluestem, Defendant BLST Operating

Company, LLC has engaged in the:

    a.   Retention of Bluestem employees;

    b.   Retention of Bluestem supervisory personnel;

    c.   Retention of the same production facility in the same physical location of Eden

       Prairie, Minnesota;

    d.   Production of the same kitchen appliance products and mail order "Fingerhut

       Catalog;"

    e.   Retained the same Bluestem name and associated trade and brand names,

       including but not limited to "Chef's Mark," "Fingerhut," and "Haband;"

    f.   Continuity of assets; and

    g.   Continuity of general business operations.

168.    BLST Operating Company, LLC's continues to do business under the "Bluestem

Brands" name, thereby holding itself out as the continuation of the Bluestems Brands,

Inc. enterprise.

169.    Because this Court has jurisdiction over Defendant Bluestem as further described

above, jurisdiction is also obtained over BLST Operating Company, LLC as a successor

corporation. See McClary v. Erie Engine & Mfg. Co., 856 F. Supp. 52, 57 (D.N.H. 1994)

(analyzing a prior corporation's contacts with a forum to determine jurisdiction over its

successor company).

170.    As it is highly unlikely that Defendant Bluestem can satisfy any portion of

Plaintiffs' judgment against Defendant Bluestem, as approved by the bankruptcy court,

and due to the other relevant factors, BLST Operating Company, LLC is liable to

Plaintiffs for the injuries and damages set forth in this Complaint under the doctrine of successor liability.

## COUNT VII — LOSS OF CONSORTIUM

### Vincent Drapeau, Individually, Against All Defendants

171. Plaintiffs hereby incorporate by reference each and every allegation contained above as though fully set forth herein.

172. Plaintiff Vincent Drapeau states that he is and at all relevant times herein mentioned was the lawful husband of the Plaintiff Chayna Drapeau.

173. As a direct, proximate and foreseeable result of the Defendant's negligence, the Plaintiff Vincent Drapeau did suffer and continues to suffer the loss of service, society, and companionship of the Plaintiff Chayna Drapeau which he enjoyed prior to the incident alleged in this Complaint.

## DAMAGES FOR ALL CAUSES OF ACTION

174. Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and for their damages for each cause of action further allege as follows:

175. As a direct and proximate result of the failure of the "Chef's Mark® Pressure Cooker," and the conduct, actions, inactions and omissions of Defendants as set forth in this Complaint, and the conduct, actions, inactions and omissions that Defendants are liable for under New Hampshire law as the "seller" of this product, Plaintiffs sustained injuries and damages, including, but not limited to:

    a)      serious and permanent burns and physical injuries;

b)      past and future pain, suffering, and anguish, both in mind and in

body;

c)      physical disability, past and future;

d)      physical impairment;

e)      disfigurement;

f)      loss of enjoyment of life;

g)      past medical bills associated with the care and treatment of both

Plaintiffs;

h)      future medical bills and expenses;

i)      such other damages as may be allowed by New Hampshire law, and

supported by the evidence; and,

j)      attorneys' fees and the costs and expenses of litigation as may be

permitted by New Hampshire law and the rules of this Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs each demand judgment against Defendants in an amount to be

determined by a jury, prejudgment interest, post-judgment interest, and taxable cost, along with

any and all other relief available under the law to fully compensate them for their injuries and

damages.

Dated: May 3, 2022

Respectfully Submitted,

/s/ D. Michael Noonan
D. Michael Noonan, Esq. #8214
mnoonan@shaheengordon.com
Attorney for the Plaintiffs
SHAHEEN & GORDON, P.A.
353 Central Ave., 2nd Floor
P.O. Box 977
Dover, NH 03821-0977
(603) 749-5000